## Motor Wheel Corporation et al. v. Minter et al.

Nov. 8, 1944.

Beatty & Beatty and E. B. Rose for appellants.

W. C. Robinson and Leebern Allen for appellees.

OPINION OF THE COURT BY JUDGE HARRIS— Affirming in part, reversing in part.

By their petition and amended petition the appellees sought to restrain and enjoin the appellants, Motor Wheel Corporation and Dan Robinson, from cutting and removing timber from a tract of land claimed by the appellees on upper Buffalo Creek, in Owsley County, and to recover three items of damages: (1) $90 on account of timber already cut and removed; (2) $250 on account of other timber injured by the cutting and removal complained of; and (3) $500 on account

of having been prevented by appellants' wrongful conduct from making a sale of timber on other nearby lands which they owned. The appellants moved: (a) to quash the sheriff's return on the summons; (b) to require the appellees to make their petition more definite and certain by giving metes and bounds of the tract of land claimed by them; to strike the third paragraph of the amended petition. And then, without waiving those motions, appellants filed demurrers to the petition and to the third paragraph of the amended petition; and without waiving their motions and demurrers, they filed their answer, which they made a cross-petition against the Earle brothers, from whom they claim to have purchased the timber in question. In their answer the appellants denied that they cut any timber on land owned by the appellees, or that they intended to do so; and they closed their pleading simply with a prayer that they be granted all proper relief, and that the appellees' petition be dismissed. The Earle brothers promptly entered their appearance and filed an answer, in which they plead, in substance, that they were the owners and in the possession of the tract of land from which the appellants had cut the timber mentioned in appellees' petition; that they and those under whom they claimed had had the legal title to and been in the actual, continuous, peaceable, adverse possession of same for more than thirty years; and that the appellees' cause of action accrued more than thirty years before the filing of their petition. They closed their pleading with simply a prayer for the dismissal of appellees' petition, for costs, and all proper relief. Proper traverse by the appellees completed the issues.

The pleadings and the testimony disclose that the land claimed by the appellees is a part of what is known as the Ponder and Kelley patent, while that claimed by the Earles is what is known as the Walker tract of the Thomas Foreman & Company lands. It seems to be agreed that that portion of the Ponder and Kelley tract which is involved in this litigation, is bounded on its east by the Walker portion of the Foreman lands. The vital question presented, therefore, is the true location of the divisional line between these two properties. During and in connection with the preparation of the case, there was filed and made a part of the record a report by D. A. Sherrill and Millard Baker, surveyors, which reads:

"Pursuant to an order of the Owsley Circuit Court, we the undersigned surveyors, E. S. Williams, D. A. Sherrill and Millard Baker, would respectfully report that in obedience to said order, we proceeded upon the premises and made a survey of the Ponder and Kelley Patent which was granted in 1851, and we wish to submit the following report:

"The original calls of this patent are as follows:

" 'Beginning at 3 white oaks and a beech, on the foot of a point in the forks of the right hand fork of Rattlesnake Branch, thence S 50 poles, thence N 73 degrees E 50 poles, thence S 46 E 360 poles, thence N 47 E 125 poles, thence N 46 W 406 poles, thence S 73 W 106 poles, thence S 50 poles to the beginning.'

"We surveyed these lines according to the above calls using the magnetic variation of 4 degrees and 12 minutes between the years of 1851 and 1943 as taken from the Book 'Magnetic Declination of the United States 1935' as published by the Coast and Geodetic Survey, Washington, D. C.

"We began this survey at the beginning corner and ran completely around said tract, closing this survey at the beginning corner.

"All of which is respectfully submitted.

"D. A. Sherrill,
"Millard Baker,
"Surveyors."

At the same time the E. S. Williams mentioned above filed a separate report, the pertinent portion of which is:

"* * * 'We began this survey at a point about 10 ft. N. of a marked beech corner, the beginning corner of the Ponder Kelley survey; thence running the direct line of the Ponder Kelley Survey with 4 degrees and 12 minutes variation, N 77-12 E 825 feet; S 41 degrees and 48 minutes E 59-40 N 51 degrees and 12 minutes E 2062½ feet, N 41 degrees and 48 minutes, W 6699 feet to a stake S 68 degrees and 48 minutes W 106 poles; thence S 4 degrees and 12 minutes to the beginning.'

"We further wish to report that we found two white oak trees cut on the land in controversy on the Jesse Lot Branch."

The testimony in the case was heard orally before the trial judge, and at its close he entered the judgment that is complained of by the appellants on this appeal. So far as pertinent the judgment reads:

"* * * it is therefore adjudged by the court that the plaintiffs are the owners of and entitled to the immediate' possession of the tract of land claimed by them and adjoining the lands of the defendant and that the true boundary between the parties, plaintiffs and defendants, was and is as set out in the report filed herein by D. A. Sherrill and Millard Baker, as follows:

" 'Beginning at three white oaks and a beech at the foot of the point in the forks of the right hand fork Rattle Snake branch; thence S 50 Po; thence N 73 degrees E 50 Po; thence S 46 E 350 Po; thence N 47 E 125 Po; thence N 46 W 206 Po; thence S 73 W W 106 Po; thence S 50 Po. to the beginning,' which is now adjudged as the boundary line between the parties hereto.

"It is further adjudged by the court that the plaintiffs recover of the defendants the sum of $37.75, being the value of seven trees taken by the defendants from the lands of plaintiffs.

"It is further adjudged by. the court that the plaintiffs recover of the defendants the sum of $229.51, damages herein, representing the interest at 6% per annum on the sum of $2500 from 21st day of November, 1941, to the 12th day of May, 1943, being the date of filing said cause to the date of the sale of the timber by the plaintiffs.

"The answers, counter-claims and cross petitions filed herein are now dismissed the defendants will take nothing thereby.

"The plaintiffs will recover their cost herein expended, including the fees and charges by the surveyors as shown by their reports filed herein."

So far as the Circuit Clerk's official transcript of the record shows, the lower court never made any ruling on the appellants' motions and demurrers; but there has been filed in this court a certification by the official stenographer to the effect that they were overruled, and that the appellant excepted. The appellees have filed in this

court a motion to strike that certification. This motion is probably well taken, but in view of the conclusions which this court has reached, a ruling upon the motion becomes unnecessary. The appellants' motion to quash the sheriff's return on the original summons was not accompanied or supported by any statement or showing of fact and, on this account, their motion should probably have been denied. But whether so or not, the appellees later had another summons served. Following this last service, the appellants, without reservation, plead to the merits of the case. This, of course, constituted an abandonment of the motion.

In their original petition the appellees described their tract of land by abuttals; and after Sherrill and Baker had filed their report of survey, the appellees filed an amendment, in which they adopted that report and made it a part of their petition. If it be conceded that the original petition was open to the objection raised by appellants' motion to require the appellees to describe their land with more particularity and certainty, such objection was met and overcome by the petition's amendment. And since this Court has reached the conclusion which will be amplified below, that the appellees are not entitled to recover any alleged damages under paragraph 3 of their amended petition, the appellants have not been harmed either by the court's failure to pass upon their motion to strike that paragraph or by his failure to rule upon their demurrer thereto.

The Chancellor's award of damages to the appellees in the sum of $229.51 under the third paragraph of their amended petition presents a more serious question. At the time this litigation arose, the appellees were negotiating with the Gennett Lumber Company with a view to selling to it, at a flat price of $2,500, the timber on all of their land, of which that in controversy is only a small fraction—about one sixty-fifth. During the pendency of the action the deal was consummated, but on a stumpage basis, rather than at the flat price indicated. The award of $229.51 is intended to represent interest on the proposed sales price of $2,500 for the period of time that the sale is alleged to have been delayed, to-wit: from the 21st of November, 1941, to the 12th of May, 1943. In making this award the Chancellor was in error. The appellees are

entitled to only such damages as are shown with reasonable certainty and as are the direct, natural and proximate circumstances of appellants' wrongful acts. The record does not show, and the appellees do not claim, that the less than four acres in controversy contained any timber of unusual or exceptional value, or that its relationship to appellees' lands as a whole was such as to affect the value or the availability of the timber on the larger acreage. Under these circumstances, therefore, it cannot be said that the failure of the Gennett Lumber Company to purchase the appellees' timber at the flat price of $2,500 was the reasonable or proximate or natural result of the controversy over the title to one sixty-fifth of appellees' land. That this is so is borne out by the fact that, while the controversy still existed, and while the law suit was still pending, the Gennett Lumber Company did make the purchase. But if it be conceded that the sale was delayed by reason of the litigation, and that the action of the Lumber Company was reasonable and natural, yet the appellees have not sustained the burden of showing that such delay did in fact damage them. As stated above, they finally sold the timber on a stumpage basis. That is, at $12.50 a thousand for poplar; $15 a thousand for walnut; and $5 a thousand for all other kinds. The nearest they have come to showing that the timber, on a stumpage basis, will not yield them as much as $2,500 and interest for the period that the sale was delayed, is the testimony of the manager of the Gennett Lumber Company that he "imagines there won't be much difference." There is no evidence as to how many thousand feet there are of all or of any one of the various kinds of timber mentioned. In short, the appellees have not proved that they were damaged.

After thorough consideration of appellants' argument with reference to title, adverse possession and champerty, we are of the opinion that the record fully authorizes and sustains the finding which was made by the Chancellor in these particulars.

For the reasons indicated, the judgment of the lower Court is reversed as to the $229.51 item, and affirmed in all other respects.